CHARLES F. BROWN, as Administrator, etc., Respondent, *v.* SIMEON KLOCK, Appellant.

*N. Y. Supreme Court, Fourth Department, General Term, May* 12, 1889.

1. *Witnesses. Legatee.*—A legatee under the will of plaintiff's testatrix and an heir, who has been paid her legacy and has released plaintiff and the estate from all claim, including any claim on the residue, is not, in case of plaintiff's solvency, an incompetent witness on behalf of the executor to testify to a communication with an insane defendant.

2. *Same.*—A legatee or heir, who takes no part in the conversation or transaction with an insane person, is competent to testify as to such matter, in an action between the executors and such insane person.

3. *Same. Afterwards shown incompetent. Remedy.*—A motion to strike out or disregard evidence is the proper remedy, in case evidence, proper at the time of its admission, is subsequently shown to be incompetent.

4. *Evidence. Error disregarded.*—An error in the admission of evidence will not avail, where there is abundant other competent evidence to establish the fact.

5. *Receipt. Claim of mistake. Burden of proof.*—In an action to recover property or money, a written acknowledgment by defendant of a certain certificate in his possession which belongs to plaintiff's decedent, casts upon him the burden of proof that the item was entered by mistake in the instrument, or he must account for the obligation or the amount.

6. *Evidence. Pleading.*—A party, by putting in evidence a count of his adversary's pleading, does not preclude himself from contradicting some of the statements in it.

Appeal from a judgment entered upon a referee's report.

The complaint alleges that on or about June 1, 1880, the defendant obtained from plaintiff's testatrix money, notes, certificates of deposit and valuables of the value and amount of $3,506.23, agreeing and promising to repay the same,

18

with interest, and on or about 27th September, 1880, gave his due bill or note, in writing, to pay the same, and that no part has been paid except $2,077.13, leaving a balance of $1,429.10.

A demand and refusal to pay is alleged, and judgment is demanded for $1,429.10, and interest, from June 1, 1880. The answer puts at issue the main allegations of the complaint. The referee reported in favor of the plaintiff for $1,250, and interest, from June 3, 1881, less a conceded off-set of $124.25, and interest, for funeral expenses of plaintiff's testatrix, paid by defendant.

After the commencement of the action, and in November, 1887, the defendant, upon inquisition, was found to be of unsound mind, and a committee was appointed who was, before the trial, made party defendant. After the trial the lunacy proceedings were reversed, on appeal to the general term, 49 Hun, 450.

*C. Carskaddan*, for appellant.

*James Coupe*, for respondent.

MERWIN, J.—The cause of action of the plaintiff, as presented at the trial, was based on an instrument, reading as follows:

" Oneida Community,one note,dated June 1,1880, $1,029 13
One note on the State Bank of Oneida . . . . . . . . . 1,429 10
One note of Robert Klock . . . . . . . . . . . . . . . . . . . . . . . 220 00
One note William Siver . . . . . . . . . . . . . . . . . . . . . . 400 00
One note George W. Ball . . . . . . . . . . . . . . . . . . . . . . 100 00
One note Charles F. Brown, January, 1, 1880 . . 200 00
One note of John Oaks, September 27, 1880, due
    E. K. Petrie . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 128 00
                              SIMEON KLOCK."

In order to prove the signature of the defendant to this paper, the plaintiff himself was called as a witness and

asked this question: "Whose signature is that to that paper?"

Objection was made that witness was not shown compe-tent to speak from knowledge of the signer's handwriting, and indirectly seeking to show a personal transaction be-tween the witness, a party interested, and a lunatic, and not competent under section 829 of Code.

The witness, then, in answer to preliminary questions of defendant's counsel, said: "I know Simeon Klock's hand-writing; I have seen him write at Oneida, February 15, 1888, not more than once. I say from seeing him write that one time, I know his handwriting. I do not base my knowledge exclusively upon that time. My answer would be based upon what he had said to me partly as well as upon the fact of seeing him write."

Then to plaintiff's counsel, the witness said: "I heard Klock testify in this matter at Oneida, within a year, to his signature. The paper was shown to him at that time."

The objection was then overruled, and defendant excepted and the witness answered: "I know the signature of Simeon Klock; the signature at the end of exhibit "A" is in the handwriting of Simeon Klock. It is his handwriting." The paper was then offered, and received in evidence.

The witness showed that he had sufficient knowledge to speak as to the handwriting of the defendant, and the only question is whether he was disqualified from speaking, under section 829, and that depended upon the force to be given to the fact testified to by him that his answer would be based partly upon what the defendant had said to him.

It is not clear whether this referred to what Klock testi-fied to at Oneida, or to something else. At most, the answer given only indirectly related to a communication between the witness and defendant—and it is very question-able whether it is within the purview of the statute. Be

that as it may, in our view of the other evidence in the case, it is not important.

A similar question was raised as to the evidence of the witness, Jane H. Brown, in relation to what occurred between the defendant and Mrs. Petrie when, as it was claimed, the defendant signed this paper. Mrs. Brown was a legatee under the will of Mrs. Petrie and was one of her heirs. Prior to giving her evidence, Mrs. Brown was paid her legacy by the plaintiff and released the plaintiff and the estate from all claim, including any claim on any residue, so that, at the time of testifying, she had no interest in the estate. But it is suggested that she was liable to refund in case there was not enough to pay the other legacies, as there would not be, were there no recovery here. It was a voluntary payment by the plaintiff, and he therefore under any ordinary circumstances could not compel the legatee to refund. (2 Wm. Exrs., 6th Am. Ed., 1560), and it has been held that an unsatisfied legatee cannot maintain an action against a satisfied legatee as long as the executor is solvent. (Id. 1562.) It is not shown here that the plaintiff is insolvent.

But there is a further answer to the objection made to Mrs. Brown's evidence, and that is that the preliminary examination by the defendant's counsel, shows that the witness took no part in the conversation or transaction, and therefore was competent to speak. Simmons *v.* Havens, 101 N. Y. 427. Afterwards, there was evidence given tending to show that Mrs. Brown did take some part in the interview, but no motion was made to strike out or disregard the evidence given by her as to the signing the paper.

A motion was made to strike out other evidence given by her, that was not objected to at all at the time it was given. That motion was properly denied.

Aside from the evidence of the plaintiff himself, and of

Mrs. Brown, there is in the case abundant evidence to re-
quire the finding that the defendant executed the paper.
If so, then any error in the admission of the plaintiff's ev-
dence would not avail. Direct evidence on the subject is
given by Mr. Rogers, one of the attorneys for the plaintiff-
and he is corroborated by another witness produced by
plaintiff, apparently disinterested, and also a witness in,
troduced by defendant, gives evidence in the same direc-
tion.

No evidence is given by the defendant as to the hand-
writing of defendant to the paper. A son of defendant,
who did business for his father at the time, was on the
stand as a witness, but was not interrogated on the
subject.

In fact the defendant does not, in his answer, deny his
signing such a paper, but says that he has no recollection of
signing it, and, if he did, it was intended merely as a mem-
orandum of property belonging to Mrs. Petrie, and not as
an obligation to pay.

We must assume, therefore, that the instrument of Sep-
tember 27, 1880, was executed by the defendant. Upon its
face it indicates that the defendant had in his hands the
property there described, to be paid or accounted for to
Mrs. Petrie. She and the defendant were relatives, and he
had acted as her agent and adviser in the management of
her business affairs; had had charge of her business for
several years.

It was conceded that Mrs. Petrie or the plaintiff have had
all the items named in the paper, except the second one. It
was also conceded by the defendant, that on September 27,
1880, Simeon Klock had no note of $1,420.10, on deposit in
the State Bank of Oneida, and never had. It was shown
that Klock, on June 3, 1879, had on deposit in the Oneida
Valley National Bank, a balance of $1,168.66; which, at that
date, was drawn by his son, acting for him, and deposited

in the Central Bank, and a certificate of deposit taken, payable to order of Simeon Klock, at five per cent interest. On the 3d June, 1880, this certificate was taken up, and a new one given, for $1,427.10, in same form.

The amount of this was apparently the amount of the other and the year's interest and $200 in addition. On June 3, 1881, the certificate of the year before was taken up and a new one given for $1,450. On the 15th August, 1881, the certificate of June 3, 1881, was surrendered, being endorsed by Simeon Klock, and in its place a certificate given for $1,250, dated June 3, 1881, and payable to the order of Klock, and also a draft for $200, payable to order of C. F. Brown, which was sent by the cashier of the bank to Brown by letter stating it was from E. K. Petrie.

The referee has drawn the inference that the business at the bank was done by Simeon Klock, and that by his direction the $200 draft was sent Brown as from Mrs. Petrie. This inference is warranted by the evidence. The $1,250 certificate was taken up September 10, 1881, being endorsed by Simeon Klock. It is not shown what became of the money. Mrs. Petrie died in June, 1883.

The referee finds that the certificate of $1,427.10 is identical with the item of $1,429.10 in the paper of September 27, 1880. This finding is authorized by the evidence. This fund was separated by Klock from his ordinary account, and placed where he previously had no deposit. An obligation on some bank evidently was designed to be stated. The amounts are similar. The circumstance as to the $200 draft is somewhat significant. It was incumbent on Klock to show a mistake in the entry of such an amount in the instrument, or to account for the obligation or the amount. No such mistake is shown. Does it appear that it is accounted for? There is evidence on the part of defendant of statements made by Mrs. Petrie that she had her business in her own hands, except the Robert Klock note; that she had got her papers and money. The time

when some of the statements were made is quite indefinite. On the other hand, there is evidence that the defendant, when this claim was presented after Mrs. Petrie's death, recognized it as correct. The certificate of $1,250 was paid September 10, 1881. If, as claimed by defendant in his answer, there was a settlement between defendant and Mrs. Petrie in December, 1881, the proceeds of that certificate would be an important factor in such settlement. Still, how or to whom that certificate was paid was not shown, although the officers of the bank, as well as the son of the defendant, who was then doing business for him, might apparently have given some light on the subject. The burden was on defendant to show the settlement.

We think the referee was justified in his conclusion that there was no such settlement.

The plaintiff put in evidence one count of defendant's answer. This did not prevent the plaintiff from showing that some statements in that count were not correct. Some other suggestions are presented by the defendant's counsel, but no error is developed affecting in any way the result.

It follows the judgment should be affirmed with costs.

All concur.